Argued and submitted February 25, ballot title certified as modified March 26, reconsideration denied April 3, 1992

## Earl BLUMENAUER,
*Petitioner,*

*v.*

## Phil KEISLING,
*Respondent.*

(SC S38912)

828 P2d 1032

Jacob Tanzer, of Ball, Janik & Novack, Portland, argued the cause for petitioner. With him on the petition was Richard H. Allan, Portland.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the answering memorandum were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

PETERSON, J.

## PETERSON, J.

Petitioner is an elector who is dissatisfied with a ballot title prepared by the Attorney General for a proposed initiative measure. ORS 250.085.[1]

Because our decision turns in part on procedural requirements of the initiative statutes, we first summarize the pertinent statutory provisions. ORS 250.045(1) permits a petitioner to file with the Secretary of State a "prospective [initiative] petition." The Secretary of State, in turn, submits the prospective petition to the Attorney General. ORS 250.065(2). The Attorney General is required to prepare and return a "draft ballot title" within five business days after receiving the prospective petition from the Secretary of State. ORS 250.065(3). Thereafter, the Secretary of State provides "reasonable statewide notice of having received the draft ballot title" and advises the public of its "right to submit written comments" concerning the draft ballot title. ORS 250.067(1). The Secretary of State immediately sends a copy of all written comments to the Attorney General, ORS 250.067(1), who is required to "consider any written comments submitted" and to "certify to the Secretary of State either the draft ballot title or a revised ballot title" no later than five business days after receiving the comments, ORS 250.067(2). Thereafter, any dissatisfied elector who timely submitted written comments may petition the Supreme Court seeking a different title. ORS 250.085(2). ORS 250.085(4) requires the court to "review the title for substantial compliance with the requirements of ORS 250.035 and 250.039" and thereafter to "certify a title meeting this standard to the Secretary of State."

ORS 250.035(1) provides:

"The ballot title of any measure to be initiated or referred shall consist of:

---

[1] ORS 250.085(2) provides:

"Any elector dissatisfied with a ballot title for an initiated or referred measure certified by the Attorney General and who timely submitted written comments on the draft ballot title may petition the Supreme Court seeking a different title. The petition shall state the reasons the title filed with the Secretary of State does not substantially comply with the requirements of ORS 250.035 and 250.039."

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."[2]

ORS 250.085(2) states that any elector who petitions the Supreme Court for a different title must have "timely submitted written comments on the draft ballot title" to the Secretary of State. ORS 250.067(1), the statute that permits members of the public to submit written comments to the Secretary of State, implicitly requires persons making written comments to the Secretary of State to do that which ORS 250.085(2) expressly requires of petitioners to the Supreme Court — to "state the reasons the [draft ballot] title filed with the Secretary of State does not substantially comply with the requirements of ORS 250.035 and 250.039."

Concerning ORS 250.085(5), this court stated:

"Under ORS 250.085(5), [a] person first must have presented arguments to the Secretary of State. We interpret this provision as requiring that, before a party can claim a right under ORS 250.085(2), the party must have offered some criticism of the draft ballot title that suggests a belief that the title does not substantially comply with the requirements of ORS 250.035 and 250.039.

"We are confident that the legislature had no desire to import into the statutory scheme a technical 'pleading' process that will vex or hamper the good faith efforts of objectors, many of whom are not attorneys. On the other hand, parties who have genuine objections should raise them at the earliest possible time. This avoids the possibility of a person's intentionally waiting until the matter is before this court to raise meritorious objections that could have been raised and resolved at the administrative level. We construe the word, 'arguments,' in ORS 250.085(5) to impose the simple requirement that the party complaining here must first have actually complained, as opposed to having merely made

---

[2] The other statute that sets forth standards for ballot titles is ORS 250.039. It concerns standards of "minimum readability." It is not relevant in this case.

abstract observations about the proposed ballot title." *Kafoury v. Roberts*, 303 Or 306, 311, 736 P2d 178 (1987).

*See also Ransom v. Roberts*, 309 Or 654, 665, 791 P2d 489 (1990) (petitioner who did not argue in comments to Secretary of State that word "amendment" should be substituted for word "provision" could not thereafter assert such argument on judicial review); *McMurdo v. Roberts*, 309 Or 318, 322, 786 P2d 1268 (1990) (letter to Secretary of State containing writer's suggested ballot title, without reference to noncompliance with controlling legal standards, is insufficient to permit court to consider writer's argument on judicial review of certified ballot title).

Even though the legislature had no intent to "import into the statutory scheme a technical 'pleading' process," *Kafoury v. Roberts, supra*, 303 Or at 311, we construe ORS 250.067(2) and ORS 250.085(5) to require that comments submitted under ORS 250.067(2) specify the respect in which the draft ballot title fails to comply with ORS 250.035 and ORS 250.039 and the reasons why the draft ballot title does not meet the statutory requirements.[3] The Attorney General can then address the issues raised and appropriately correct the draft ballot title.

The statutory plan ensures that members of the public have the opportunity to submit written comments concerning draft ballot titles, with the goal that the certified ballot title comply with the statutory requirements, when tested by the written comments made by members of the public. A further goal likely was to speed up the overall process by reducing the number of petitions filed with the Supreme Court. We turn now to a discussion of the ballot title involved in this case.

The prospective petition here involved proposes this addition to Article XI of the Oregon Constitution:

"*Section 2b.* Notwithstanding Article I, section 27 or any other provision of this Constitution or any enactment of the

---

[3] Concerning changes made by the Attorney General to the draft ballot title after the comment period, ORS 250.085(5) provides:

"When reviewing a title prepared by the Attorney General, the court shall not consider arguments concerning the ballot title not presented in writing to the Secretary of State unless the court determines that the argument concerns language added to or removed from the draft title after expiration of the comment period provided in ORS 250.067."

Legislature, incorporated cities or towns of a population of more than 40,000 may enact ordinances regulating in any manner the sale, purchase, possession, or use of any firearms or ammunition within the boundaries of the city or town, provided that:

"(1)   no such ordinance shall void, reduce, or impair any restrictions or penalties placed by the Legislature on the sale, purchase, possession or use of firearms or ammunition, and;

"(2)   no such ordinance shall take effect until the governing body of the city or town has referred the ordinance to the voters of the city or town and the ordinance has been approved by a majority of those qualified voters who vote on the referendum."[4]

Article I, section 27, the existing section referred to in the first sentence of the proposed new section, provides:

"The people shall have the right to bear arms for the defence [*sic*] of themselves, and the State, but the Military shall be kept in strict subordination to the civil power[.]"

The *draft* ballot title (not the *certified* ballot title) issued by the Attorney General, ORS 250.065(3), read as follows:

"EXEMPTS LARGE CITIES FROM STATE
CONSTITUTIONAL RIGHT TO BEAR ARMS

"QUESTION:   Shall state constitution allow large cities to regulate possession, use of guns, ammunition notwithstanding state constitution's right to bear arms?

"SUMMARY:   Amends state constitution. Permits cities with population over 40,000 to enact laws regulating in any manner the sale, purchase, possession and use of firearms and ammunition within city limits, notwithstanding state constitution's right to bear arms. City may not void, reduce or impair state law restrictions or penalties on sale, purchase, possession or use of firearms or ammunition. City ordinances regulating firearms or ammunition may not take effect unless referred to city voters and approved by a majority."

---

[4] The proposed amendment would become a part of Article XI of the Oregon Constitution. Article XI concerns state banks, formation of corporations, municipal charters, liability of shareholders, compensation for property taken by a corporation, the credit of the state, restriction of municipal powers, municipal corporations, school districts, utility districts, and other things.

Petitioner, and others, submitted written comments. After considering the written comments, the Attorney General revised the Question to read as follows:

"QUESTION: Shall state constitution allow large cities to regulate possession, use of guns, ammunition notwithstanding constitutional rights, contrary state statutes?"

and certified a revised ballot title identical to the draft ballot title except for the quoted change to the Question.

Thereafter, petitioner filed a petition in the Supreme Court, requesting that the Caption and the Question be changed. Petitioner states:

"In order to reasonably identify the subject of the measure, a caption should inform voters that: (1) the measure is a constitutional amendment; (2) the measure applies only to larger municipalities; (3) the measure authorizes (but does not require) eligible municipalities to regulate firearms and ammunition; and (4) an ordinance is not effective until approved by referendum." (Footnote omitted.)

Petitioner also asserts:

• The Caption does not mention regulation of firearms;

• It "is confusing to state that the measure 'exempts' large cities from a state constitutional right";

• The Caption "fails to convey that the measure would grant *constitutional* authority for eligible towns and cities to regulate firearms" (emphasis in original);

• "The caption's reference to the 'state constitutional right to bear arms' is inaccurate" because Article I, section 27, "applies to an array of hand-carried weapons, not just firearms."

Only two of those arguments were made in petitioner's written comments submitted to the Secretary of State. Although we might agree with some or all of petitioner's other arguments, we will consider only the two contentions made in the written comments submitted to the Secretary of State. One pertains to the use of the word "exempts" in the Caption; the other is that the Caption should inform electors that any municipal firearm ordinance "is not effective until approved by referendum."

Petitioner complains of the use of the word "exempts" in the Caption:

> "[I]t is confusing to state that the measure 'exempts' large cities from a state constitutional right. Faced with the certified caption, a voter may wonder why the measure would take the right to bear arms away from large cities. The answer, of course, is that it does not. The 'right' belongs to individuals: 'The people shall have the right to bear arms for defence of themselves, and the state * * *.' Article I, Section 27. The proposed measure does not 'exempt' municipalities from that 'right.' Rather, it authorizes cities to regulate firearms."[5]

Petitioner's complaints are well taken. The measure itself does not exempt large *cities* from the constitutional right to bear arms. It authorizes such cities to regulate firearms by ordinances approved after referral to their voters.

We turn to the second contention, that the Caption should "inform voters that [any ordinance] is not effective until approved by referendum." Although the referendum provision is not the "subject of the measure," ORS 250.035(1), it is sufficiently important that we will include it if we can do so within the 10-word limitation.

And, because we are changing the Caption, we also will state that the initiative would amend the constitution, which we often include in the Caption when constitutional amendments are proposed. Accordingly, we certify this Caption:

"AMENDS CONSTITUTION:
LARGE CITIES MAY, AFTER REFERENDUM,
REGULATE FIREARMS, AMMUNITION."

For the reasons set forth above, we will make conforming changes to the Question. We certify this Question:

> "QUESTION: Shall state constitution be amended to allow large cities to regulate firearms or ammunition, after

---

[5] Petitioner's argument to the Secretary of State read in part:

"If enacted, the proposed constitutional amendment, standing alone, would have no effect on a citizen's state constitutional right to bear arms. It provides an *opportunity* for cities to exempt themselves by referring legislation to the voters." (Emphasis in original.)

The Attorney General's response indicated that he understood that argument to be similar to the one advanced in this court.

referendum, notwithstanding other constitutional provisions?"

Accordingly, we certify this ballot title to the Secretary of State:

"AMENDS CONSTITUTION:
LARGE CITIES MAY, AFTER REFERENDUM,
REGULATE FIREARMS, AMMUNITION.

"QUESTION: Shall state constitution be amended to allow large cities to regulate firearms or ammunition, after referendum, notwithstanding other constitutional provisions?

"SUMMARY: Amends state constitution. Permits cities with population over 40,000 to enact laws regulating in any manner the sale, purchase, possession and use of firearms and ammunition within city limits, notwithstanding state constitution's right to bear arms or other state constitutional or statutory provisions. City may not void, reduce or impair state law restrictions or penalties on sale, purchase, possession or use of firearms or ammunition. City ordinance regulating firearms or ammunition may not take effect unless referred to city voters and approved by a majority."

Ballot title certified as modified.

This decision shall become effective in accordance with ORAP 11.30(10).